UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| MARIA ABUEG, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:14-CV-00635-GMN-GWF |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| STATE FARM MUTUAL AUTOMOBILE ) | Motion to Compel - #19 |
| INSURANCE COMPANY d.b.a. STATE FARM ) | Countermotion to Compel - #22 |
| ) | |
| Defendant. ) | |

This matter is before the Court on Plaintiff's First Motion to Compel (#19), filed on July 14, 2014. Defendant State Farm Mutual Automobile Insurance Company's Response to Plaintiff Maria Abueg's Motion to Compel (#30) was filed on July 31, 2014. Plaintiff's Reply to Defendant's Response to Plaintiff's First Motion to Compel (#31) was filed on August 5, 2014.

Also before the Court is Plaintiff's Countermotion to Compel (#22) against non-party Integrated Medical Evaluations, Inc. ("IME, Inc."), filed on July 21, 2014. IME, Inc. filed an Opposition to Plaintiff's Countermotion to Compel (#29) on July 31, 2014. Plaintiff's Reply to IME, Inc.'s Response to Plaintiff's Countermotion to Compel (#32) was filed on August 8, 2014. The Court conducted a hearing on these motions on August 15, 2014.

## BACKGROUND

Plaintiff Maria Abueg filed her complaint in this action in the Nevada district court on April 1, 2014. Plaintiff alleges claims against her insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), for breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Nevada Unfair Claims Practices Act.

Plaintiff was injured in an automobile accident on May 15, 2012. *See Complaint (#1)*. She settled her claim against the non-party tortfeasor for the $100,000 limits of the tortfeasor's

1  automobile liability insurance policy on August 28, 2013.  On September 26, 2013, Plaintiff made a
2  demand to her insurer, State Farm, for the $50,000 limits of her underinsured motorist coverage.
3  One of the principal issues in the case is whether an injury to Plaintiff's left foot, including a
4  peroneus longus tendon tear, was caused by the May 15, 2012 accident or occurred subsequent to
5  that accident.  State Farm sent a questionnaire to Plaintiff's treating physician, Advanced
6  Orthopedics & Sports Medicine, inquiring as to the cause of Plaintiff's foot injury.  Dr. Kuruvilla
7  completed the questionnaire in or about November 2013 and opined that Plaintiff's foot injury was
8  more than likely caused by the trauma of the motor vehicle accident.  State Farm thereafter sought
9  its own medical review of Plaintiff's foot condition.  State Farm contacted Integrated Medical
10 Evaluations, Inc. ("IME, Inc.") which is a vender that arranges medical records reviews to be
11 performed by various physicians.  In this case, IME, Inc. arranged for Dr. Thomas Benenati, a
12 podiatrist, to perform the medical records review requested by State Farm.  Dr. Benenati reviewed
13 the medical records that were provided to him by State Farm and submitted his report to State Farm
14 on or about March 7, 2014.  Dr. Benenati opined that the ganglion cyst or tumor on the top of
15 Plaintiff's left foot could have been caused by a direct blow or trauma on the top of the foot.  He
16 stated that it was unlikely, however, that the peroneus longus tendon tear was caused by the
17 accident trauma.

Plaintiff argues that the evidence, including the opinions of her treating physicians, supports the conclusion that her foot injury was caused by the motor vehicle accident and that State Farm should have settled her claim on that basis.  Plaintiff alleges that State Farm engaged in unreasonable delay in investigating her claim and has improperly relied on the biased opinion of a non-treating physician, Dr. Benenati, that her foot injury was not entirely caused by the accident. All of State Farm's alleged conduct on which Plaintiff's claims are based occurred before the filing of the complaint.

## DISCUSSION

### I. Motion to Compel Production of State Farm's Claim File Documents.

Plaintiff's Motion to Compel (#19) requests that the Court order State Farm to produce post litigation claim file notes and records relating to communications with its counsel.  State Farm

objected based on the work-product doctrine and the attorney-client privilege.  Plaintiff argues that State Farm did not properly invoke the privileges and violated Fed.R.Civ.Pro. 26(b)(5), which results in the waiver of its privileges.

Rule 26(b)(5)(A) provides as follows:
> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (I) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Compliance with the rule required State Farm to "set forth for each document (1) its type (i.e. letter, memo, notes, etc.), (2) its author, (3) its intended recipients, (4) the names of any other individuals with access to the document, (5) the date of the document, (6) the nature of the claimed privilege (i.e. attorney-client, work-product, etc.), and (7) a brief summary of the subject matter of the document." *Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118, 121 (D. Nev 1993).  A failure to assert privileges in accordance with Rule 26(b)(5) can result in a waiver of the privilege.  In *Koninklijke Philips Electronics N.V. v. KXD Technology, Inc.*, 2007 WL 778153 (D. Nev. 2007), for example, the court held that the privilege log which did not contain the dates of the communications or the recipient of the communications was inadequate and that the privilege had been waived.

In this case, State Farm produced a privilege log for 59 claim file notes, an internal fax forwarding Plaintiff's summons and complaint, and a letter to counsel containing the claims file.  The log identified the type of document, the author, the intended recipients, the date of creation, the nature of the claimed privilege, and a brief summary of the subject matter of the document for all the claimed privileged materials. *State Farm's Response (#30), Exhibit A*.  For the 59 claim file notes, State Farm asserted that the attorney-client privilege and work-product doctrine bar discovery. *Id.*  For the internal fax containing the summons and complaint, State Farm asserted no privilege, but stated that the document was irrelevant. *Id.*  For the letter to counsel containing the claims file, State Farm asserted that it is irrelevant, contains the mental impressions of an adjuster, relates to an offer of compromise, is proprietary, and is protected by the attorney-client privilege

and work-product doctrine. *Id*. The Court finds that the privilege log sufficiently identifies the documents and privileges asserted, such that the privileges have not been waived.

The work-product doctrine protects from discovery by the opposing party materials prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). Application of the work product is governed by federal law. *Bozzuto v. Cox, Castle & Nicholson, LLP*, 255 F.R.D. 673 (C.D. Cal. 2009); *F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 196 F.R.D. 375, 381 (S.D. Cal. 2000); *Ferrara & DiMercuiro, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 11 (D. Mass. 1997). An insurance claim file can straddle the line between "ordinary course of business" and work done "in anticipation of litigation." *Camacho v. Nationwide Mutual Insurance Co.*, 287 F.R.D. 688, 694 (N.D. Ga. 2012). While claim files "generally do not constitute work product in the early stages of a claims investigation," they are protected by the work-product doctrine "once litigation is imminent." 287 F.R.D. at 694, citing *Underwriters Insurance Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 667 (N.D. Ga. 2008). In *Palmer by Diacon v. Farmers Ins. Exchange*, 861 P.2d. 895, 910 (Mont. 1993), the Montana Supreme Court determined that the insurer's claim file was covered by the work-product doctrine because it was "prepared with an eye toward eventual bad faith litigation." *Id.* at 910. The court applied the doctrine to any materials dated after the threat of litigation was made by the plaintiff. *Id.* at 909-910.

The work-product doctrine, however, does not provide absolute protection from discovery. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The party seeking discovery may obtain "ordinary" work product if it shows that "it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.Pro. 26(b)(3)(A)(ii). Plaintiff argues that the post-litigation claim records are "certainly relevant" because they contain "email communications of party-opponents (insurance adjusters) made during the ordinary course of business regarding the handling of Plaintiff's underinsured motorist claim." *Motion to Compel (#19), pg. 8*. The bad faith claim in this case, however, is based on State Farm's pre-lawsuit conduct in allegedly delaying payment and denying Plaintiff's claim on the basis of an allegedly biased medical records review. Plaintiff has not alleged any post-litigation developments or conduct such as Defendant's failure or refusal to consider new or

additional evidence relevant to the evaluation of Plaintiff's underinsured motorist claim. The Court has reviewed the claim file notes *in camera* and found that they do not contain any additional information relating to the evaluation of Plaintiff's claim. The Court therefore concludes that post-litigation claim file notes are irrelevant and immaterial, such that Plaintiff cannot demonstrate substantial need for their production.

The attorney-client privilege protects confidential communications between a client and its attorney relating to the rendering of legal advice. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 625-626 (D. Nev. 2013) (setting forth the elements of the privilege). The privilege applies in almost all circumstances, including insurance bad faith cases in which an insurer obtained advice from legal counsel. *Palmer v. Farmers Insurance Exchange*, 861 P.2d 895, 906 (Mont. 1993). State Farm does not assert as an affirmative defense that it relied on the advice of counsel in regard to its evaluation of or decisions made with respect to Plaintiff's claim. Accordingly, State Farm has not waived the attorney-client privilege by placing its attorneys' advice or opinions in issue. State Farm's April 18, 2014 letter to its counsel is arguably within the attorney-client privilege because it is a communication about the pending litigation. The letter, however, does not contain any discussion about the case or any specific request for legal advice. Rather, it is simply a cover letter containing the complaint and summons and informing the attorney that the case has been filed. The Court finds that the document is not discoverable because it is irrelevant.

State Farm also asserted that all 59 claim file notes are protected by the attorney-client privilege. Most of these notes, however, contain no reference to any communications with counsel. A few notes make reference to the interactions between State Farm's claim representatives and its counsel. These notes, however, also simply refer to ministerial or clerical actions such as mailing or copying the file, or placing phone calls. Although these notes may not fall within the attorney-client privilege because they do not reference any legal advice sought or provided, they are protected work product and are also irrelevant and need not be produced. The Court also finds that the fax letter forwarding the summons and complaint to defense counsel is irrelevant and need not be produced.

. . .

II. **Plaintiff's Countermotion to Compel Production of Medical Records Review Reports Obtained by IME, Inc. on Behalf of State Farm.**

Plaintiff's Countermotion to Compel (#22) requests that non-party Integrated Medical Examinations, Inc. ("IME, Inc.") be ordered to produce "any and all reports, correspondences, invoices, contracts, e-mails, electronic communications, computer printouts, screen shots and other documents pertaining to Integrated Medical Evaluations being retained by [State Farm] to perform independent medical evaluations or records reviews of or in regards to Nevada resident or Nevada based bodily injury or underinsured motorist claimants within the last five (5) years." *Motion (#21), pg. 5*. During the August 15, 2014 hearing, the Court ordered IME, Inc. to provide certain information to Plaintiff regarding its contractual relationship with State Farm. This order addresses Plaintiff's motion to compel production of medical records review reports in other claims that were obtained through the services of IME, Inc. Prior to filing its Countermotion, Plaintiff agreed to limit the scope of its subpoena to medical records review or independent medical examination reports pertaining to Nevada claimants for underinsured and bodily injury coverage for the last five years. In her reply brief, Plaintiff further agreed to shorten the time period to three years. *Reply (#32), pg. 3*.

IME, Inc. argues that the subpoenaed documents are irrelevant, and are not likely to lead to the discovery of admissible evidence. It also argues that compliance with the subpoena would be unduly burdensome, although it was not able to provide the Court with an estimate of the number of State Farm claims for which IME, Inc. provided physicians to perform medical records reviews. IME, Inc. also indicated that it does not have possession of the reports prepared by the physicians and would have to contact the physicians to obtain these records. *Motion to Quash (#17), pg. 5*. In this regard, IME, Inc. stated that once it provides State Farm with the identity of the physician who will perform the medical records review, State Farm forwards the medical records and its questions directly to the physician and the physician, in turn, sends his or her report directly to State Farm. It may, thus, be more appropriate for Plaintiff to direct her request for medical records review reports to State Farm. However, because the Court concludes that the requested production of medical records review reports should be denied, it will address Plaintiff's arguments for their production.

6

Plaintiff relies on two cases in which courts have ordered a defendant insurance company to produce reports prepared by its experts in other claims involving similar issues. In *Hussey v. State Farm Lloyds Insurance Co.*, 216 F.R.D. 591 (E.D. Tex. 2003), the insureds made a claim under their homeowners' policy for damages to the foundation of their home. The policy providing coverage for foundation damage caused by plumbing leaks. During its investigation, State Farm discovered a plumbing leak. It retained an expert to determine whether the foundation damage was caused by the plumbing leak. The expert determined that it was not, and State Farm denied the insureds' claim on that basis. The insured sued State Farm for breach of contract and bad faith. The insureds served the expert with a subpoena requesting all reports prepared by him for State Farm during the past five years "on residential foundation claims where damage was alleged to be caused by a plumbing leak." In holding that the reports were relevant, the court quoted *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 446 (Tex. 1997) in which the Texas Supreme Court stated that "'an insurer's reliance on an expert's report, standing alone, will not necessarily shield the carrier [from liability] if there is evidence that the report was not objectively prepared or that the insurer's reliance on the report was unreasonable.'" *Hussey*, 216 F.R.D. at 594. Based on this analysis, the court in *Hussey* stated:

> In the instant case, the Court finds that the expert reports completed by Perdue for State Farm for the past five years dealing with plumbing leaks are relevant to determining whether State Farm breached its duty of good faith and fair dealing. The previous expert reports conducted by Perdue could potentially allow the fact-finder to logically infer that Perdue's reports were not objectively prepared, that State Farm was aware of Perdue's lack of objectivity, and that State Farm's reliance on the reports were merely pretextual. Accordingly, expert reports are discoverable because they are relevant to the general subject matter of this case and are likely to lead to the discovery of admissible evidence."

216 F.R.D. at 594.

Plaintiff also relies on *Kelly v. Provident Life and Accident Insurance Co.*, 2010 WL 3259997, *1 (D. Vt. 2010) in which the defendant insurers denied plaintiff's disability insurance claim based on the opinions of two physicians retained by the insurers. The plaintiff moved to compel the insurers to produce reports prepared by the same physicians for the defendants in other claims. The insurers advised the court that the total number of such reports was less than 20. The

7

court, relying on *Hussey,* found that the expert reports were discoverable. The court found that the discovery was reasonable because the number of reports was relatively small. The court also limited the production to reports issued within the preceding five years. The court rejected the insurers' argument that disclosure would invite distracting "mini trials" because the court "can easily prescribe the use of the reports at trial to avoid the possibility." *Id.*

*Hussey* and *Kelly* are factually distinguishable from this case on two grounds. First, both cases involved reports prepared by the same expert or physicians who rendered the opinions on plaintiffs' claims. In this case, however, Plaintiff seeks to obtain medical records review reports prepared by all physicians who were retained through IME, Inc. to provide medical records reviews for State Farm in uninsured motorist or bodily injury claims in the past three or five years. Second, the discovery ordered in *Hussey* involved substantially the same factual issue–reports relating to whether foundation damage was caused by plumbing leaks. The scope of the issue was somewhat broader in *Kelly*– denial of disability benefits in other claims based on the reports of the two doctors. In this case, Plaintiff seeks medical records review reports relating to Nevada based bodily injury or underinsured motorist claimants. Motor vehicle accidents result in a variety of injuries that may call upon the expertise of treating and reviewing physicians in different medical specialties. The injuries at issue in other claims will likely, if not certainly, involve other parts of the body, as well as differences in the extent or degree of injuries, and differences in the claimants' relevant medical histories which affect the determination of medical causation.

It is, of course, conceivable that an analysis of the requested reports may show that a high percentage of the opinions were favorable to State Farm's position that the claimants' injuries were not caused by the accident. Such a finding, however, is not necessarily evidence of unreasonable or biased medical opinions. If the insurer requests medical records reviews when it has a reasonable doubt regarding causation, the fact that the reports support the insurer's position on causation does not establish that the doctors were biased or their opinions were not objectively reasonable. The reasonableness of physicians' opinions can only be determined by evaluating them in light of the medical and other evidence in the claim. Contrary to *Kelly*, this Court does not believe that collateral "mini-trials" regarding medical opinions rendered in other claims can be easily avoided if

the validity or invalidity of those opinions is to be fairly considered.

While the information requested by Plaintiff may be relevant in the broad sense, discovery must also be proportional and tailored to the claims at issue in the lawsuit. "The rule of proportionality is intended to 'guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry.'" *Leski, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989) (quoting Advisory Committee Notes to the 1983 Amendments to Rule 26). The general state of the case law regarding the discovery of other claims is summarized in *Williston Basin Interstate v. Factory Mut. Ins.*, 270 F.R.D. 456, 465 (D.N.D. 2010) as follows:

> Some courts have permitted discovery similar to what is proposed here. *E.g., Westport Ins. Corp. v. Wilkes & McHugh, P.A.,* 264 F.R.D. 368, 371–373 (W.D.Tenn. 2009). Other cases have upheld objections to the requested discovery on the basis that the requested information is either of marginal or no relevancy, at least under the particular circumstances of the case. *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 2007 WL 3376831, *5 (S.D. Ohio Nov. 9, 2007); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.,* 197 F.R.D. 620, 644 (N.D. Iowa 2000); *Clark Equip. Co. v. Liberty Mut. Ins. Co.,* 1995 WL 867344, * *3–4 (Del.Super. April 21, 1995). Also, some of these cases have expressed concern over the disclosure of confidential information of other insureds. However, in most of the cases, this was not the exclusive grounds for denying the discovery. *See id.* Still other cases have agreed that the evidence may be relevant, but have upheld objections on the grounds that the burdens of the proposed discovery are disproportionate to the potential benefits. *E.g., Leksi, Inc. v. Fed. Ins. Co.,* 129 F.R.D. 99, 105–106 (D.N.J.1989). Finally, still other courts have permitted some discovery, concluding that the evidence may be relevant, but have imposed limits on the discovery because of the burdens imposed. *E.g., Sunnen Products Co. v. Travelers Cas. and Sur. Co. of America,* 2010 WL 743633, *2–4 (E.D.Mo. Feb.25, 2010); *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.,* 135 F.R.D. 101, 107 (D.N.J. 1990); *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.,* 117 F.R.D. 283, 286–287 & n. 3 (D.D.C. 1986).

Plaintiff has the ability to contest the validity and reasonableness of Dr. Benenati's opinion regarding her foot injury based on the medical records and the opinions of her own treating physicians. Plaintiff can also contest Dr. Benenati's credibility based on the fact that he has been compensated by State Farm for providing his records review. If Dr. Benenati has provided medical records reviews for State Farm in other underinsured motorist or bodily injury claims, then Plaintiff is entitled to obtain copies of his reports in those claims. The identities of the claimants, however,

should be initially redacted. The Court concludes, however, that requiring IME, Inc. or State Farm to produce all medical records review reports regarding Nevada uninsured motorist or bodily injury claimants is of only marginal relevance and would likely result in additional collateral and burdensome discovery. Accordingly,

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel (#19) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Counter-Motion to Compel (#22) is **granted**, in part, and **denied**, in part, as follows:

Integrated Medical Evaluations, Inc. is ordered to produce all medical records review reports in its possession, custody or control that were prepared by Dr. Thomas J. Benenati for or on behalf of Defendant State Farm in regard to Nevada based bodily injury or underinsured motorist claimants between January 1, 2009 and the present.

DATED this 30th day of October, 2014.

GEORGE FOLEY, JR.
United States Magistrate Judge